**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

YUSNIER PEREZ CANET,

    Petitioner

v.

TODD BLANCHE,[1] et al.,

    Respondents

Case No.: 2:26-cv-00223-APG-NJK

**Order Granting in Part Petition for Habeas Corpus**

[ECF No. 13]

Petitioner Yusnier Perez Canet is a citizen of Cuba. ECF Nos. 13-1 at 2; 13-2 at 2. He came to the United States as a minor under refugee status in 2011. ECF No. 13 at 4; 13-2 at 2, 9. He became a lawful permanent resident on May 11, 2015. ECF No. 13-1 at 2. Perez Canet pleaded guilty in 2019 to one count of transporting aliens not lawfully in the United States. *Id.*; ECF No. 15-2 at 25. That is an aggravated felony that affected his lawful permanent resident status. ECF Nos. 15-1 at 2; 15-2 at 8, 18. He was not taken into custody by Immigration and Customs Enforcement (ICE) at that time.

On August 19, 2025, Perez Canet was arrested by the Nevada Highway Patrol on suspicion of driving under the influence. ECF No. 15-2 at 8. He was transported to a detention center in Las Vegas where he was taken into ICE custody that same day and issued a notice to appear for removal proceedings. ECF No. 15-2 at 2-5, 8.

While in ICE custody, Perez Canet sought asylum and withholding of removal. ECF No. 13-2. The immigration judge denied his application for asylum and withholding of removal and ordered him removed to Cuba on December 18, 2025. ECF No. 15-2 at 24, 26. The removal

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Attorney General Todd Blanche is substituted for Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted for Kristi Noem.

order became final on January 20, 2026 because Perez Canet did not appeal the removal order.[2] ECF No. 13 at 5; 15-2 at 27.

Perez Canet asserts, on information and belief, that Cuba will not issue travel documents for him and will not accept him.  According to Perez Canet, ICE tried to remove him to Mexico three times even though the removal order designates Cuba as the country for removal. ECF No. 13 at 5.  He asserts one of those attempted removals occurred before the final removal order was entered. *Id.*  The government does not dispute any of this.

On March 2, 2026, ICE issued him a "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)." ECF No. 15-3 at 2.  The notice stated that Perez Canet's custody status had been reviewed and that he would not be released because he did not comply with his obligation to obtain travel documents and "refus[ed] to board [his] removal flight on January 27, 2026." *Id.* According to Perez Canet, that flight was bound for Mexico, not Cuba. ECF No. 13 at 5.  The government does not dispute that the January 27 flight was to Mexico. ECF No. 15 at 10 (stating that Perez Canet "would have been released approximately 50 days ago via removal from the United States had he complied with Immigration Officials" and that he had "not expressed a fear of removal to Mexico . . .").

Perez Canet raises four grounds in his petition.  First, he asserts that ICE's policy to remove noncitizens to a third country without notice and an opportunity to seek fear-based protections violates the Fifth Amendment's due process clause and is arbitrary and capricious under the Administrative Procedure Act (APA).  Second, he asserts that his detention to effectuate a third country removal without adequate notice and opportunity to be heard violates

---

[2] I address below the government's argument that the removal period has been extended due to Perez Canet's failure to timely apply for travel documents.

his due process rights.  Third, he argues that his continued detention violates due process under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because his removal is not reasonably foreseeable. Finally, he argues that his detention is governed by and violates 8 U.S.C. § 1231(a)(6) because removal is not reasonably foreseeable and further detention is unreasonable.  For relief, he requests that I: (1) prohibit the respondents from removing him to a third country without providing him and his counsel adequate notice of intent to remove him to a third country; (2) declare that his continued detention violates § 1231(a)(6), the APA, and the Fifth Amendment's due process clause; (3) order his immediate release; and (4) prohibit the respondents from re-detaining him "absent proof of changed circumstances making his removal reasonably foreseeable." ECF No. 13 at 17.

The government responds that I lack jurisdiction over the petition under 8 U.S.C. § 1252(b)(9) and (g).  Alternatively, it argues that Perez Canet's detention is mandatory for the first 90 days under § 1231(a), presumptively reasonable for six months under *Zadvydas*, and properly extended if the noncitizen fails or refuses to timely apply in good faith for travel documents.  The government argues that at the time Perez Canet filed his petition, he was still within the 90-day removal period, so his detention was mandatory.  And it asserts that he could have been released from custody if he had cooperated with the effort to remove him to Mexico. It notes that he has not expressed a fear of removal to Mexico and he has not moved to reopen his case with the immigration court to litigate third country removal.

Perez Canet replies that I have jurisdiction under 28 U.S.C. § 2241, federal question jurisdiction, *Zadvydas*, and the APA.  He asserts that the government has not attempted to show that removal to Cuba is reasonably foreseeable.  He argues that the government has not shown that removal to Mexico would be lawful, so it cannot blame Perez Canet for refusing to agree to

be sent there.  He contends that the government has not initiated a third country removal process that complies with due process because he was not afforded a right to counsel, no fear-based adjudication regarding Mexico has occurred, and there is no evidence that Mexico has issued him documents or would accept him.  Perez Canet argues he should be released because he cannot be removed to Cuba and the government has not attempted to lawfully secure third country removal, so his removal is not reasonably foreseeable under *Zadvydas*.

I grant Perez Canet's petition in part.  I order his immediate release subject to reasonable conditions of supervision, and I order the respondents to comply with due process before attempting to effectuate a third country removal.

**I.  DISCUSSION**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas*, 533 U.S. at 687; *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

/ / / /

**A.  I have jurisdiction over Perez Canet's petition.**

The Ninth Circuit has concluded that § 1252(g) and (b)(9) do not strip courts of jurisdiction where a petitioner "objects to the lack of process afforded him in connection with having been sent to a country not designated in the [immigration judge's] removal order, despite his vehement and repeated objections that he feared being sent there." *Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025).  The Ninth Circuit reasoned that § 1252(g) did not bar review because the petitioner did "not challenge ICE's discretionary authority to decide 'when' or 'whether' to execute a removal order." *Id.* at 997.  It also concluded that "§ 1252(b)(9) does not apply because [the petitioner] brings claims that arose after completion of his removal proceedings." *Id.*

The same is true here.  Perez Canet does not seek review of his removal order, he does not challenge ICE's authority to decide when or whether to execute a removal order, he asserts claims related to ICE's efforts to remove him to a third country after the completion of his removal proceedings before the immigration judge, and he challenges the constitutionality of his continued detention.  I therefore have jurisdiction to consider his claims. *See Alkarori v. Nevada S. Det. Ctr.*, No. 2:25-CV-02567-MMD-MDC, 2026 WL 266756, at *1 (D. Nev. Feb. 2, 2026). *See also Rodriguez v. Mullin*, No. 2:26-cv-00531-APG-NJK, 2026 WL 895685, at *2 (D. Nev. Apr. 1, 2026) (rejecting similar jurisdictional arguments under §§ 1252(g) and (b)(9) in the context of detention under § 1226).

**B.  There is no significant likelihood of removal to Cuba in the reasonably foreseeable future.**

Individuals with final removal orders are subject to mandatory detention for 90 days to effectuate the removal. *See* 8 U.S.C. §§ 1231(a)(1), (2).  As relevant here, the 90-day removal

5

period begins on the "date the order of removal becomes administratively final." Id. at § 1231(a)(1)(B)(i).  Perez Canet's removal order became final on January 20, 2026, when he did not appeal the removal order.[3]  The 90-day period of mandatory detention thus ended on April 20, 2026.

The Attorney General has discretion to detain noncitizens beyond this 90-day period under 8 U.S.C. § 1231(a)(6).  However, to avoid doubt about the statute's constitutionality, the Supreme Court in *Zadvydas* read into the statute an "implicit limitation" on that discretion because a statute that permitted indefinite detention "would raise a serious constitutional problem" under the Fifth Amendment's due process clause. 533 U.S. at 682, 689-90.  The Supreme Court adopted a six-month period as a presumptively reasonable period of detention to effectuate removal. *Id.* at 701.  After that six-month period, if a detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

The government argues that Perez Canet's petition is premature because he was not in custody for six months at the time he filed his petition.  Indeed, he was still within the mandatory 90-day removal period, which has now expired.  But the six-month period is only a presumption. The noncitizen may rebut the presumption that continued detention is reasonable where there is no significant likelihood of removal in the reasonably foreseeable future. *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395-97 (D.N.J. 2025); *Alkarori*, 2026 WL 266756, at *2-3.  If the noncitizen makes this showing, then the government "must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

---

[3] I address below the government's argument that the removal period was extended by Perez Canet's failure to timely apply for travel documents.

6

Here, Perez Canet has shown that there is no significant likelihood of removal to Cuba in the reasonably foreseeable future.  He states that to his knowledge Cuba has not and will not issue travel documents or admit him.  He asserts that is consistent with Cuba's position generally not to accept Cuban nationals under final orders of removal from the United States, "particularly those with criminal convictions." ECF No. 13 at 16.  The government does not dispute these assertions, and it provides no evidence to suggest otherwise.  The government's assertion that the petition is premature because the six-month presumptively reasonable period has not expired is unconvincing where the government has made no argument that removal to Cuba is reasonably likely in the next three months or any time thereafter.  Thus, there is no significant likelihood of removal to Cuba in the reasonably foreseeable future, so any continued detention based on effectuating removal to Cuba violates the implicit limitation in § 1231(a)(6) and Perez Canet's due process rights under *Zadvydas*.

**C.  The government has not complied with due process in its attempts to remove Perez Canet to Mexico or any other third country.**

The usual path for the government to remove a noncitizen is through removal proceedings, which require written notice to the noncitizen and an evidentiary hearing before an immigration judge (IJ). 8 U.S.C. §§ 1229(a), 1229a.  In the removal proceeding, if the IJ determines the noncitizen may be removed, the IJ also designates to what country or countries the noncitizen may be removed. 8 C.F.R. § 1240.12(d).  If the U.S. Department of Homeland Security (DHS) is "unable to remove the alien to the specified or alternative country or countries, the order of the immigration judge does not limit [DHS's authority] to remove the alien to any other country as permitted by [8 U.S.C. § 1231(b)]." *Id.*  Removal to a country that is not identified by the immigration judge during the removal proceedings is referred to as a third

country removal.  Although DHS has authority to effectuate third country removals, a noncitizen may not be removed to a country where his or her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion" (referred to as "withholding of removal"), or where "it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal" (referred to as the Convention Against Torture or CAT). 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16.

Here, the government has not shown that removal to Mexico or any other third country is permissible under § 1231(b)(2)(E).  Under § 1231(b)(2)(E), the Attorney General may effectuate a third country removal to "any of the following countries":

> (i) The country from which the alien was admitted to the United States.
> (ii) The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.
> (iii) A country in which the alien resided before the alien entered the country from which the alien entered the United States.
> (iv) The country in which the alien was born.
> (v) The country that had sovereignty over the alien's birthplace when the alien was born.
> (vi) The country in which the alien's birthplace is located when the alien is ordered removed.
> (vii) If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

The government has not identified which of these applies to its attempt to remove Perez Canet to Mexico.  Nor has it presented any evidence to support that any applies.  The information before me is that Perez Canet came to Florida, apparently from Cuba, where he was born and was a citizen.  Thus, none of the first six options supports sending him to Mexico.  The government is presumably relying on the last option because removal to Cuba is "impracticable, inadvisable, or impossible" given that Cuba will not accept him.  But the government has

presented no evidence that Mexico will accept Perez Canet.  There is no evidence that the government has taken steps to obtain a Mexican travel document for Perez Canet, that Mexico has agreed to accept him, or even that there has been any communication with Mexico regarding Perez Canet.

Moreover, I agree with other courts that the government must comply with the due process requirements of notice and a reasonable opportunity to be heard before a third country removal can be effectuated.[4] *See, e.g.*, *L.R. v. Noem*, --- F. Supp. 3d ----, No. 2:25-cv-02019-RFB-BNW, 2026 WL 161605, at *11-12 (D. Nev. Jan. 21, 2026); *A.A.M. v. Andrews*, --- F. Supp. 3d. ----, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3485219, at *8-10 (E.D. Cal. Dec. 4, 2025); *Elshourbagy v. Bondi*, --- F. Supp. 3d ----, No. 2:25-cv-02432-TL, 2025 WL 3718993, at *7-8 (W.D. Wash. Dec. 23, 2025); *Gomez v. Mattos*, --- F. Supp. 3d ----, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025).  The noncitizen must receive "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019).  Additionally, the noncitizen must be asked whether they fear persecution or harm upon removal to the third country, and their response must be memorialized in a writing signed by the noncitizen. *Id.*  "If the noncitizen expresses a fear of persecution or harm, DHS must inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts." *Id.*  Finally, the government must give the noncitizen "adequate time to prepare and file a motion to reopen in order to challenge DHS's country designation and/or apply for asylum, withholding, and relief under the CAT." *Id.* at

---

[4] Because I agree with Perez Canet's due process argument, I do not address his argument under the APA in count one.

1020; *see also A.A.M.*, 2025 WL 3485219, at *9 (concluding the petitioner was likely to succeed on the merits because "due process requires Petitioner be provided an opportunity to have his fear-based claims for removal to [a third country] considered by an immigration judge").

The government has presented no evidence that it gave Perez Canet notice that it intended to remove him to Mexico, that it identified the applicable subsection of § 1231(b)(2) to support designating Mexico, when (if ever) it gave him notice, and whether the timing of any notice gave him a meaningful opportunity to apply for fear-based protection from removal to Mexico. The government states only that Perez Canet has not expressed fear of removal to Mexico and has not moved to reopen his case in immigration court. But the government has not shown that it properly initiated a third country removal that Perez Canet could challenge. Instead, it apparently tried to get him to board a plane to Mexico with no evidence that it gave him notice or an opportunity to be heard.

**D. The government has not shown that the mandatory removal period was extended by Perez Canet's refusal to board a flight bound for Mexico.**

The 90-day removal period for a noncitizen with a final order of removal can be extended if the noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). To trigger this extension, the government must serve the alien a "Notice of Failure to Comply," which sets forth the relevant statutory provisions (8 U.S.C. §§ 1231(a)(1)(C), 1253(a)), describes the "circumstances demonstrating his or her failure to comply with" § 1231(a)(1)(C), and provides "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements." 8 C.F.R. § 241.4(g)(5)(ii). The government must also advise the alien that the

10

"Notice of Failure to Comply shall have the effect of extending the removal period as provided by law, if the removal period has not yet expired," and that the government is not required to complete any scheduled custody reviews under 8 C.F.R. § 241.4 until the noncitizen has "demonstrated compliance with the statutory obligations." *Id.* § 241.4(g)(5)(iii).

Here, ICE issued Perez Canet a Notice of Failure to Comply. That notice stated that on January 27, 2026, Perez Canet was "advised via form I-229(a) and Instruction Sheet to Detainee, of specific requirements to complete with your obligation to assist in obtaining a travel document." ECF No. 15-3 at 2. The government has not provided the form I-229(a), so it is unclear from the record what the government told Perez Canet he needed to do. The Notice of Failure to Comply states that Perez Canet "refused efforts for [his] removal by refusing to board [his] removal flight on January 27, 2026," so he "failed to comply with [his] obligation and [is] acting to prevent [his] removal from the United States." *Id.*

The government has presented me with no evidence surrounding the events related to the January 27, 2026 flight beyond this Notice of Failure to Comply. I have no information that Perez Canet was notified that he was going to be removed to Mexico, when that notice happened relative to the flight, or that he was given a reasonable opportunity to raise fear-based objections. The government presents no authority that supports the proposition that a noncitizen who refuses to board a flight bound for a third country not identified in the removal proceedings, and for whom the government has not afforded due process to challenge that designation, triggers the extension of the mandatory 90-day removal period. I reject the suggestion that the government's due process violation could support extending the removal period under § 1231(a)(1)(C).

/ / / /

/ / / /

11

**D.  There is no significant likelihood of removal to a third country in the reasonably foreseeable future.**

Although the government could cure the due process violation and attempt a third country removal properly, there is no evidence before me that it has taken any steps to do so. There is no evidence it has given Perez Canet notice, that it has identified a statutory basis to designate Mexico or any other third country, that it has contacted Mexico about Perez Canet, that Mexico has issued travel documents, or that Mexico would agree to accept Perez Canet.  Thus, there is no significant likelihood of removal to a third country in the reasonably foreseeable future.  Consequently, further detention to effectuate a third country removal violates due process.[5]

**E.  I grant in part Perez Canet's petition.**

Removing Perez Canet to a third country without adequate notice and an opportunity to be heard violates his due process rights.  Because there is no significant likelihood of removal to Cuba or any other country in the reasonably foreseeable future, Perez Canet's continued detention violates the statute and due process under *Zadvydas* because "the detention in question exceeds a period reasonably necessary to secure removal." 533 U.S. at 699.  I therefore grant grounds one, two, and three of Perez Canet's petition, but I need not and do not address Perez Canet's claim under the APA in ground one or his claim under § 1231 in ground four.

Although Perez Canet argues he should be immediately released, the remedy for a *Zadvydas* claim is generally release that is "conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt

---

[5] I therefore need not consider Perez Canet's assertion in ground four that his detention violates § 1231.

12

be returned to custody upon a violation of those conditions." *Id.* at 700.  Thus, the appropriate remedy is to order his release subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3).  Additionally, because the government must comply with due process before effectuating a third country removal, I grant Perez Canet's request that I prohibit the government from removing him to a third country without providing him and his counsel adequate notice of intent to remove him to a third country and a meaningful opportunity to respond.  Finally, I grant his request to prohibit the government from re-detaining him absent (1) proof of changed circumstances making his removal reasonably foreseeable or (2) violation of reasonable terms of supervision.

## II.  CONCLUSION

I THEREFORE ORDER that Yusnier Perez Canet's amended petition for habeas corpus **(ECF No. 13) is GRANTED in part**.

I FURTHER ORDER that the respondents must release Yusnier Perez Canet respondent from the custody of Nevada Southern Detention Center on **Thursday, April 23, 2026**, and transport him to 501 Las Vegas Blvd South, Las Vegas, Nevada by 5:00 p.m. that same day.  The respondents must advise Perez Canet's counsel of the estimated time of release for coordination purposes.  Perez Canet's release is subject to reasonable terms of supervision as set forth in 8 U.S.C. § 1231(a)(3).  Determining reasonable terms of supervision must not in any way impede the immediate release of Perez Canet.

I FURTHER ORDER that the respondents are prohibited from removing Yusnier Perez Canet to Mexico or any other third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of providing him a

reasonable opportunity to reopen immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge.

I FURTHER ORDER that the respondents are prohibited from re-detaining Yusnier Perez Canet absent proof (1) of changed circumstances making his removal reasonably foreseeable and without first following the required statutory procedures, or (2) that he violated a reasonable term of supervision and without first following any required statutory or regulatory procedures.

I FURTHER ORDER the clerk of court to close this case.

DATED this 22nd day of April, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE